## 66628. GARMON v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant, Curtis L. Garmon, appeals his conviction of kidnapping, rape, and theft by taking. The complainant testified that she had received two pay checks from the Perimeter Marriott Hotel and caught the bus to return to Atlanta. She met the defendant on the bus and they talked until they reached Five Points. Both left the bus and she went into a store and cashed her checks. The defendant accompanied her. She went to several shops with the defendant. As they were walking down Martin Luther King, Jr. Drive they cut across a parking lot and the defendant placed a weapon to her side and directed her into an abandoned building in Underground Atlanta. She testified that she was raped and then her money was taken from her purse. She complained to a state patrolman who called the Atlanta police. The complainant was taken to Grady Memorial Hospital where she was examined. The doctor found her to be upset and distraught and a physical examination showed the presence of sperm indicating recent intercourse. She spoke to Detective Tiedge at Underground Atlanta where she indicated the

place where she said the rape occurred. It was an old barroom, and the officer observed the contents which the complainant advised her she had left after the assault occurred which included the contents of her purse and items she had just purchased from several stores. Detective Tiedge observed that her slacks were missing a button at the waist and the slacks and shirt were soiled and dirty. The complainant told Detective Tiedge that the defendant had advised her he was looking for a job and had circled an ad in the paper where he had been. The officer went to that location and spoke with the personnel manager who supplied her with a list of individuals who had applied for the job that morning. From that list the officer identified the defendant and provided the complainant with two sets of photographs. She identified the defendant as the man who allegedly raped and robbed her.

Detective Tiedge advised the defendant of his Miranda rights. He signed the waiver of counsel form and gave her his version of the events. He had been for a job interview and on the bus returning to Atlanta met a young lady. She provided him with a phone number. When they left the bus they went to Church's Fried Chicken and had lunch. In their conversation she asked him if he "smoked reefer" — marijuana. He admitted that he occasionally smoked marijuana. She asked him if he knew of a place where they could "smoke some reefer." He took her to Underground Atlanta. She had marijuana in an envelope and they "fired up." He stated that she asked him to have intercourse with her and after they finished she gathered up her bags and they left.

The defendant testified at the Jackson-Denno hearing that he "didn't make all of those different words, all of the words that she said I made." On cross-examination he admitted he had intercourse with the complainant and that he "stole" $85 — from her open purse while they were having intercourse. He also admitted that he did not tell Detective Tiedge he took the money. He told her he did not take $160, but did not tell her he took $85. *Held:*

1. The general grounds are without merit. The evidence is sufficient to enable any rational trier of fact to find the existence of the offenses charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. At the call of defendant's case, he requested appointment of another counsel. The trial court had previously appointed counsel for him. His request was denied but the court did permit him to act as co-counsel. The denial of his request for a different appointed counsel is enumerated as error.

"A criminal defendant does have a constitutional right to be defended ·by counsel of his own selection whenever he is willing and

able to employ such counsel. [Cits.] However, an indigent criminal defendant does not have an absolute right to discharge one court-appointed counsel and have another substituted in his place. A request of this sort addresses itself to the sound discretion of the trial court." *Burney v. State,* 244 Ga. 33, 35 (257 SE2d 543), U. S. cert. den. 444 U. S. 970. We have reviewed the record and transcript of trial and find no abuse of discretion.

3. Counsel for the defendant attempted to impeach the complainant by showing that she made a different statement during the preliminary hearing from that during the trial. The witness first denied that she made the statement at the preliminary hearing and then said she could not remember. The witness was excused and the jury was permitted to leave for the day. However, at that point defendant spoke up and the court asked him if he had something to say. He said that he would prefer to say it in front of the jury. The court asked him to tell the court what it was and then he would rule whether he could tell it to the jury. "THE DEFENDANT: What I wanted to say is this transcript has been changed completely. All the statements in this transcript has been changed." His counsel objected but the judge recalled the jury and permitted the defendant to make his statement to the jury. After the jury was seated in the box defendant said: "Your Honor, I would like to withdraw that statement . . . THE COURT: All right. Ladies and gentlemen, the case is a little unusual, because the Defendant is insisting upon representing himself part of the time and causing some confusion but he has now withdrawn that." No objection was made by the defendant to the court's explanation.

On appeal, defendant objects to the statement that his representation of himself was "causing some confusion . . ." The failure to object or move for a mistrial prevents defendant from raising this issue on appeal. *Key v. State,* 146 Ga. App. 536 (4) (246 SE2d 723), U. S. cert. den. 439 U. S. 990. "The question of whether Code Ann. § 81-1104 [now OCGA § 9-10-7] has been violated is not reached unless an objection or motion for mistrial is made." *State v. Griffin,* 240 Ga. 470 (241 SE2d 230).

4. We find no error in the trial court's failure to give in charge the defendant's request on consent. The charge given covered the elements of the offense of rape — which required that the act be "forcibly and against her will." "The charge given is fair and complete, and 'where the charge given substantially covers the applicable principles, failure to give requested instructions in the exact language requested is not error.' " *Crawford v. State,* 236 Ga. 491, 493 (224 SE2d 365).

5. The State introduced the testimony of another female victim

of an assault. She testified that during July 1981 she was in front of the Five Points MARTA station waiting for a bus when the defendant came up behind her and held a knife to her back. He directed her to Underground Atlanta — which was one block away. She was taken to an abandoned building in Underground and she was thrown on the floor behind a bar. She told the defendant she had asthma and had to have some air. He took her to the door that he had kicked in to get into the building and she broke away and ran.

" '[B]efore evidence of independent crimes is admissible two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter. [Cit.] Once the identity of the accused as the perpetrator of the offense separate and distinct from the one for which he is on trial has been proven, testimony concerning the independent crime may be admitted for the purpose of showing identity, motive, plan, scheme, bent of mind, and course of conduct.' " *State v. Johnson,* 246 Ga. 654 (1) (272 SE2d 321). The prior offense was of sufficient similarity to be admissible to prove motive, plan, scheme, bent of mind and course of conduct — following identification of the defendant as the perpetrator.

6. The State offered in evidence the testimony of a polygraph examiner that prior to a polygraph examination the defendant admitted to the examiner that he had stolen the money of the complainant. An agreement was offered in evidence between the defendant, his counsel, and the prosecutor that the defendant would take a polygraph examination and "that the results of that polygraph examination and testimony of the polygraph examiner shall be admitted into evidence at trial." The polygraph examiner, who worked for the GBI, testified that he first advised the defendant of his Miranda rights — including "[a]nything you say can and will be used against you in a court of law . . ." Following such advice the examiner discussed the test with the defendant and went over the test questions, and "he admitted that he had stolen the victim's money by removing it from her purse without her knowledge, while they were having sex." The examination showed the defendant was not truthful in denying he forced the victim to go with him, forced her to have sex with him, and pointed a pistol at her. He was truthful when he admitted he stole her money. The defendant enumerates as error the admission in evidence of "pre-test statements of defendant to the polygraph examiner."

The defendant was fully advised of his rights by the examiner before the conversation took place, and presumably by his lawyer

when the counsel and the defendant agreed to take the test and for its results, including the "testimony of the polygraph examiner shall be admitted into evidence at trial." We find no error. *Reynolds v. State,* 147 Ga. App. 488 (2) (249 SE2d 305).

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED SEPTEMBER 7, 1983.

*Louise T. Norwood,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Richard E. Hicks, Robert A. Weathers, Assistant District Attorneys,* for appellee.